■ In the Matter of KELLY G., a Child Alleged to be Permanently Neglected. TOMPKINS COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; WILLIAM G., Appellant. [636 NYS2d 225] —Crew III, J. Appeals from two orders of the Family Court of Tompkins County (Barrett, J.), entered June 24, 1994 and July 25, 1994, which granted petitioner's application, in a proceeding pursuant to Social Services Law § 384-b, to adjudicate respondent's child to be permanently neglected, and terminated respondent's parental rights.

Respondent is the father of Kelly G. (born in 1992). Kelly was placed in petitioner's custody shortly after her birth . A neglect petition subsequently was filed against respondent and Family Court, after apparently finding that respondent abused alcohol to the degree that he was unable to adequately care for his child, continued Kelly's placement with petitioner. Petitioner thereafter commenced this proceeding in March 1994 alleging that Kelly was permanently neglected and seeking to terminate respondent's parental rights. Following hearings, at which respondent appeared and testified, Family Court granted the petition, adjudicated Kelly a permanently neglected child and terminated respondent's parental rights. This appeal by respondent followed.

Respondent does not appear to contest that petitioner fulfilled its threshold statutory obligation to exercise diligent efforts to strengthen the relationship between respondent and Kelly (*see*, Social Services Law § 384-b [7] [a], [f]; *Matter of Michelle F.*, 222 AD2d 747), and a review of the record indicates that petitioner indeed discharged its duty in this regard. Rather, respondent contends that inasmuch as he substantially complied with petitioner's various service plans, the record fails to establish by clear and convincing evidence that Kelly is in fact a permanently neglected child. We cannot agree.

To be sure, the record reflects that respondent indeed made progress while Kelly was in petitioner's custody; respondent attended a number of programs and classes, maintained contact with petitioner's caseworkers and regularly visited his daughter. One of the primary obstacles to Kelly's return to respondent, however, was respondent's alcohol and substance abuse. In this regard, although respondent admittedly participated in certain treatment and counseling programs, the record also indicates that during the relevant time period, respondent's urine tested positive for drugs on two occasions and respondent admitted to using cocaine in May 1993 and January 1994. Thus, although respondent was cooperative and made some progress, he nevertheless failed to overcome the primary problem that led to Kelly's removal in the first instance (*see*, *Matter of Grace Q.*, 200 AD2d 894, 895-896; *Matter of Orange County Dept. of Social Servs. v Joann P.*, 195 AD2d 512, 513, *lv denied* 82 NY2d 658). Accordingly, we are satisfied that petitioner met its burden of establishing that Kelly was a permanently neglected child.

Respondent next contends that in view of his demonstrated progress, Family Court should have granted him a suspended judgment instead of terminating his parental rights, thereby

granting him additional time to overcome his addiction and plan for Kelly's future. Again, we cannot say that Family Court's determination in this regard is not supported by the record. At the dispositional hearing conducted in this matter, the director of clinical services at Alpha House (where respondent was a client) testified that in view of respondent's prior history, his prognosis for successful treatment was "guarded to poor". Additionally, respondent testified that he still loved Kelly's mother and intended to continue seeing her, despite the fact that she also apparently had a substance abuse problem.* Under the circumstances, we cannot say that Family Court erred in concluding that termination of respondent's parental rights was in Kelly's best interest.

Mikoll, J. P., Mercure, Casey and Yesawich Jr., JJ., concur. Ordered that the orders are affirmed, without costs.

---

* Respondent's continued relationship with Kelly's mother was further complicated by the fact that her parental rights had previously been terminated.